
**CT Corporation**

**Service of Process Transmittal**
09/05/2012
CT Log Number 521165200

**TO:** Neil Kunkel
Capella Healthcare, Inc.
501 Corporate Centre Drive, Suite 200
Franklin, TN 37067

**RE:** **Process Served in Tennessee**

**FOR:** River Park Hospital, LLC (Domestic State: TN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Sheila M. (Brown) Hendrickson, Pltf. vs. River Park Hospital, LLC, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Return on Service, Complaint |
| **COURT/AGENCY:** | Warren County Circuit Court, TN<br>Case # None Specified |
| **NATURE OF ACTION:** | Employee Litigation - Plaintiff's be granted a judgment against the defendant's for compensatory and other damages suffered by her as a result of being fired by the defendant's |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/05/2012 at 15:30 |
| **JURISDICTION SERVED:** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days from the date this summons is served upon you |
| **ATTORNEY(S) / SENDER(S):** | Ann Buntin Steiner<br>Steiner & Steiner<br>613 Woodland Street<br>Nashville, TN 37206<br>615-244-5063 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/05/2012, Expected Purge Date: 09/10/2012<br>Image SOP<br>Email Notification, Denise Warren denise.warren@capellahealth.com<br>Email Notification, Chuck Self charles.self@capellahealth.com<br>Email Notification, Carolyn Schneider Carolyn.schneider@capellahealth.com<br>Email Notification, Cindy Paragone cindy.paragone@capellahealth.com<br>Email Notification, Neil Kunkel neil.kunkel@capellahealth.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Amy McLaren |
| **ADDRESS:** | 800 S. Gay Street<br>Suite 2021<br>Knoxville, TN 37929-9710 |
| **TELEPHONE:** | 800-592-9023 |

Page 1 of 1 / SB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# STATE OF TENNESSEE
# WARREN COUNTY

☒ First
☐ Alias
☐ Pluries

Sheila M. (Brown) Hendrickson

CIVIL ACTION DOCKET NO. _____

**Plaintiff**

FILED
AUG 28 2012
_____Time _____Initials
BERNADETTE W. MORRIS
CIRCUIT COURT CLERK

Vs.

River Park Hospital, LLC

Agent for Serv. Of Process: C T Corporation System

800 S. Gay Street, Suite 2021

Knoxville, TN 37929-9710

**Defendant**

**Method of Service:**

☐ Davidson County Sheriff
☒ Out of County Sheriff
☐ Secretary of State
☐ Certified Mail
☐ Personal Service
☐ Commissioner of Insurance

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, P.O. Box 639, McMinnville, TN 37111, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: _____8-28-12_____

**BERNADETTE W. MORRIS**
Circuit Court Clerk
Warren County, Tennessee

By: _____ Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Ann Buntin Steiner |
|---|---|
| | 613 Woodland Street |
| | Address |
| | Nashville, Tennessee 37206 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

**BERNADETTE W. MORRIS**
Circuit Court Clerk

Received this summons for service this __31__ day of __Aug__, 20__12__.

W C Bryant #B1864
SHERIFF

♿ If you have a disability and require assistance, please contact (931) 473-2373

# RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of SEP 0 5 2012 _____, 20____, I:

[✓] served this summons and complaint/petition on _____

__Ericka Fry__ _____ in the following manner:

River Park Hospital LLC
_____

[ ] failed to serve this summons within 90 days after its issuance because _____

_____ Bryant #B1864
                                                        Sheriff/Process Server

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20____ I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the compliant in Docket No. _____ to the defendant, _____. On the _____ day of _____ 20____, I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20____. Said return receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS
_____ DAY OF _____, 20____.

_____NOTARY PUBLIC or _____DEPUTY CLERK
MY COMMISSION EXPIRES: _____

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

## NOTICE

**TO THE DEFENDANT(S):**

Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

STATE OF TENNESSEE
COUNTY OF WARREN

I, Bernadette W. Morris, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

BERNADETTE W. MORRIS, CLERK

(To be completed only if
copy certification required)

By: _____ D.C.

IN THE CIRCUIT COURT FOR WARREN COUNTY, TENNESSEE
AT MCMINNVILLE

| | |
|---|---|
| SHEILA M. (BROWN) HENDRICKSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| ) | JURY DEMAND |
| RIVER PARK HOSPITAL, LLC, ) | |
| RIVER PARK HOSPITAL, INC. AND ) | FILED |
| CAPELLA HEALTHCARE, INC. ) | AUG 28 2012 |
| ) | ____Time____ |
| Defendants. ) | BERNADETTE W. MORRIS ___Initials |
| | CIRCUIT COURT CLERK |

## COMPLAINT

Comes now the Plaintiff, Sheila M. (Brown) Hendrickson, and for cause of action would show unto this Honorable Court the following:

1. Plaintiff, Sheila M. (Brown) Hendrickson, brings this action under Tenn. Code Ann. §50-1-304, The Tennessee Whistleblower Act, the common law of the State of Tennessee The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et. seq.* and under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. §1395dd, prohibiting retaliatory discharge.

2. Plaintiff, Sheila M. (Brown) Hendrickson, is a citizen of McMinnville, Warren County, Tennessee.

3. Defendant, River Park Hospital, LLC, is a Tennessee corporation. Agent for service of process is C T Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710. It is believed Defendant, River Park Hospital, Inc., changed its name to River Park Hospital, LLC.

1

4. Defendant, Capella Healthcare, Inc., is a Delaware Corporation. Agent for service of process is C T Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710. Defendant, Capella Healthcare, Inc., is the parent company of Defendant, River Park Hospital, LLC. Both Defendants are located at the same corporate headquarters at 501 Corporate Centre Drive, Ste. 200, Franklin, Tennessee 37067-2662.

5. The cause of action alleged in this Complaint arose in Warren County, Tennessee.

6. Defendant, River Park Hospital, is operating a hospital in McMinnville, Warren County, Tennessee.

7. Plaintiff has been a nurse since 1993. She was certified in critical care in 1994 and has worked in critical care for 15 years. Plaintiff was hired by Defendants on October 25, 2007, as an Administrative House Supervisor.

8. In approximately January 2010, Plaintiff became ill with helicobacter pylori. This condition worsened and by March 6, 2011, Plaintiff had both applied for and thereafter qualified for leave under the Family and Medical Leave Act of 1993 (hereinafter FMLA). This leave was extended through May 1, 2011.

9. Plaintiff was able to return to work during this period for a short period of time on an intermittent basis.

10. River Park Hospital had a policy that should the Hospital be placed on diversion "the Emergency Department will continue to provide appropriate stabilizing treatment to patients who present <u>unknown</u> for care". The Hospital's procedure for placing the Hospital on diversion required that "[a]fter exhausting all resources, should it become evident there will be insufficient human or physical resources to safety manage additional patients; the nursing supervisor will notify the CNO, and the Administrator on Call (AOC)." Before placing the Hospital on

2

diversion, the CEO, CNO or the AOC was responsible for validating the need to implement general or specific diversion of additional patients.

11. On April 8, 2011, a serious roll over motor vehicle accident occurred on the border of DeKalb and Warren County. Dekalb County EMS arrived on the scene. The injured family was from Warren County and requested to be brought to River Park Hospital because their medical records were there. Two ambulances brought four patients to River Park Hospital. The EMS ambulances transported the injured parties to the driveway of the hospital in front of and within feet from the door of the emergency room.

12. On this date, Plaintiff had returned for a few days from her FMLA Leave and was the house supervisor that night and would have been the employee responsible for notifying the CNO and the Administrator on Call (AOC) of the need to place the hospital on diversion.

13. Shawna Creighton, charge nurse at River Park Hospital, contacted Plaintiff and told Plaintiff of the incoming ambulances and stated that there was no way they could take the patients because they did not have enough staff. Creighton did not have many years of nursing experience. Creighton told Plaintiff the emergency room was already full with nine people waiting in triage.

14. Plaintiff explained to Creighton that they had been in this situation before and that the Hospital could handle this situation. Plaintiff told Creighton to prioritize the patient situation in the ER and to move patients that were not in critical condition to the hallway or back to the waiting area in order to make room for the ambulances bringing in the trauma patients. Plaintiff told her "You make room for the patients". Plaintiff told Creighton she didn't care how long other patients, (unless critical), had to wait but to make room for the new trauma patients.

3

Plaintiff told Creighton the Hospital could get in trouble for not accepting and/or treating and/or medically screening the patients.

15. At the time of this conversation, Plaintiff was on the third floor with two new LPNs giving blood and was unable to go to the ER at that time.

16. Instead of following Plaintiff's directions, Creighton contacted the Director of Nursing, Lynn Peoples, but not the Administrator on Call, to request to place the hospital on diversion.

17. On April 8, 2011 at 7:39 p.m., the Hospital was placed on ambulance diversion status.

18. Thereafter, the EMS personnel transporting the patients to the Hospital were notified River Park was on diversion. The EMS personnel contacted their supervisor who advised them that the EMS Director had spoken with the Regional Director and advised to continue to transport the patients to River Park Hospital.

19. At approximately 7:40 p.m. on April 8, 2011, the Director of EMS called the charge nurse, Creighton, at the Emergency Department at River Park Hospital and told Creighton "You can't refuse the patients because it's an EMTALA violation." Creighton replied, "Oh, yes, I can." Creighton further stated "I don't care what you have in the ambulance. They are not coming to River Park Hospital."

20. At 7:57 p.m., the EMS ambulances arrived at the bay area (area closest to the doors where the patients can be unloaded directly into the emergency room). The physician on duty met the ambulance driver in the bay, "speaking loud and throwing...hands in the air"...and said the hospital was on diversion and would not accept the patients and to take them to another

4

hospital. The physician did not assess the patients for stability or determine if an emergency medical condition existed.

21. The EMS personnel told the physician the patients were minors and their parents wanted them transported to River Park and were going to meet them there. The physician replied he didn't care.

22. The patients were then transferred to another hospital.

23. Plaintiff would state that it was illegal and an EMTALA violation for the Hospital to refuse to accept these patients and for the Hospital to be placed on ambulance diversion. Plaintiff both refused to engage in this action and refused to remain silent about this action. The need did not exist for the Hospital to be placed on diversion.

24. Within a short period of time, the hospital began to accept other patients arriving by ambulance.

25. The patients and their guardians filed a complaint and it was investigated by the Department for Health and Human Services Center for Medicare and Medicaid Services. During the investigation, the personnel for CMS came to the hospital to interview various witnesses. Plaintiff requested from her supervisor, Ms. Peoples, that she be allowed to be interviewed because she voiced very strongly her opinion that the hospital should not be placed on diversion status and the patients should never have been turned away from the Hospital. The Hospital should have provided proper medical care and provided appropriate stabilizing care and treatment for all of the patients. The Hospital had never been on hospital diversion or ambulance diversion status to Plaintiff's knowledge.

26. Ms. Peoples admitted to Plaintiff that Peoples had made an error and should never have told Creighton to place the hospital on ambulance diversion.

5

27. Plaintiff called the Hospital's risk manager and asked to be interviewed by the State authorities about the incident. Plaintiff told her the hospital should not have been placed on ambulance diversion and that the nurse who did this was inexperienced and "green". She further stated that the patients never should have been turned away from the Hospital and the Hospital should have provided proper medical care and provided appropriate stabilizing care and treatment for all of the patients. Plaintiff told her she knew the State had been there conducting interviews and no one had requested her to give an interview. The risk manager stated the physician should have known better and that Plaintiff did not need to be interviewed because the case had already been taking care of and it was a closed case.

28. After investigating the complaint, CMS found the complaint to be substantiated and the hospital's failure had the potential to cause serious injury, harm, impairment or death to the four patients. In its investigation, CMS found the emergency department employees were required to complete required education in ACLS (Advanced Cardiac Life Support), PALS (Pediatric Advanced Life Support), BLS (Basic Life Support), and it was mandatory for all employees to be certified in these areas. Despite emergency room staff receiving evaluations of "Consistently meets job requirements", three of five employee records reviewed by CMS revealed employees had not received this required training. CMS ordered all emergency room providers, nurses, House Supervisors and the Director of Emergency Services/ICU, CEO, CNO, CQO, Risk Manager and CFO to review all applicable hospital policies and procedures, including those pertaining to EMTALA, and to verify their review and understanding of the policies and procedures no later than April 26, 2011, or the first date after April 26, 2011, that such individual worked in the hospital's emergency department. Effective 6:00 a.m. on April 27,

2011, only individuals who had verified their review and understanding of the applicable policies and procedures were allowed to work in the hospital's emergency department.

29. On May 19, 2011, Plaintiff was written up for having 11 occurrences, or missed days. The disciplinary form did not list the days allegedly missed. Plaintiff did not have 11 occurrences. Plaintiff informed Defendant this could not be correct and requested the documentation to support this charge. Plaintiff received and reviewed the documentation and it showed the charge was in error. Plaintiff had only missed three days, but had valid excuses for all three of these days. Plaintiff informed Defendant of this and was told she was still in violation. Plaintiff was also told Defendant had done an audit of her days.

30. Plaintiff had job duties that would require her to go all over the hospital. One night, a co-worker mentioned to her supervisor he had not seen her. The supervisor then requested the co-worker write a statement about not being able to find Plaintiff. The co-worker refused to do so. Plaintiff had done nothing wrong, but was performing her job duties in another part of the hospital.

31. On June 15, 2011, the tube system went down, losing all access to the entire hospital. Maintenance was called and it was determined that the tube system had failed at the pharmacy. Bill Jones in maintenance told Plaintiff that Ricky Christopher also in maintenance could override the lock so that she and Bill Jones could enter the pharmacy to fix the problem. Bill Jones came to Plaintiff and explained to her that he tried to get a hold of the pharmacist several times and was unsuccessful. The only thing they knew to do was to override the system and fix the problem. Ricky Christopher unlocked the door by overriding the system. Plaintiff and Bill Jones entered the pharmacy where there were multiple canisters blocking the tube system. The problem was fixed. Later the pharmacist walked in from getting lunch. He did not clock out

7

or let anyone know he was leaving the premises. Plaintiff received a written warning for this. Plaintiff was also required to have her hair cut and sent for drug testing for the biggest panel testing that could be run. It is believed Plaintiff was the only individual at that time who received a warning for this.

32. Plaintiff believes her employer targeted her for unjustified write-ups in an attempt to terminate her.

33. Plaintiff became ill on October 15, 2011, while at work. Plaintiff called Tim Burgess, Director, and told him she was ill and running a fever and needed to go home and Tinera Hutchins would take her place. Burgess told Plaintiff if Hutchens was comfortable taking her place, this would be okay. Plaintiff told him that Dr. Leone wrote her out a prescription for Z-Pac and she would not be there the next day or Sunday. She asked him could Tinera take her place on Sunday. He said "fine" as long as Ms. Hutchens felt comfortable doing so. If Tinera Hutchens had any problems, she was to call Burgess. Teresa Lee, House supervisor for night shift, called Plaintiff at home that Saturday night and Plaintiff told her she was not going to be at work Sunday either. Plaintiff did not have to work Monday or Tuesday. Plaintiff was authorized by her superiors to take these days off for her illness.

34. On that Sunday, Defendant fired Plaintiff by letter dated October 16, 2011, which Plaintiff received on October 18, 2011.

35. The Emergency Medical Treatment and Active Labor Act (EMTALA) required River Park to "provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists" for any individual who "comes to the emergency department" and requests treatment. Further, this law required River Park if it determined that the individual has an emergency medical condition, to provide either (A) within

8

the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility.

36. On April 8, 2011, Defendants' actions violated the Emergency Medical Treatment and Active Labor Act (EMTALA), Section 1867(a) of the Social Security Act, (Patient Anti-Dumping Act), by its failure to provide appropriate medical screening for the patients arriving by ambulance and failure to treat and/or provide transfer of the patients to another medical facility. Further, there was no need to place River Park on diversion on this date.

37. Plaintiff would state she was fired for her refusal to engage in and refusal to remain silent about Defendants illegal actions in violating EMTALA and in placing River Park on diversion.

38. Plaintiff would assert this is a law intended to protect the public health, safety and welfare.

39. Plaintiff is a qualified medical person who refused to authorize the transfer of individuals with emergency medical conditions which had not been stabilized. Plaintiff reported a violation of a requirement of this section entitling her to whistleblower protection under EMTALA, 42 U.S.C. § 1395dd (i).

40. In the alternative, Plaintiff would state she was fired in retaliation for taking Family and Medical Leave as authorized under the Family and Medical Leave Act.

**WHEREFORE, PLAINTIFF PRAYS:**

1. That Plaintiff, Sheila M. (Brown) Hendrickson, be granted a judgment against the Defendants, for compensatory and other damages suffered by her as a result of being fired by the

9

Defendants, including but not limited to, damages for humiliation and embarrassment, pain and suffering, back pay, interest and lost benefits in the amount of $1,000,000.00.

2. That the Plaintiff, Sheila M. (Brown) Hendrickson, be reinstated, or front pay in lieu thereof, with all accumulated salary rights and benefits as if continuously employed.

3. Plaintiff, Sheila M. (Brown) Hendrickson, further prays for both liquidated and punitive damages in the amount of $1,000,000.00.

4. Plaintiff, Sheila M. (Brown) Hendrickson, further prays for pre-judgment interest, attorney fees and the costs of this cause.

5. Plaintiff, Sheila M. (Brown) Hendrickson, prays for a jury of six (6) to try this cause.

6. Plaintiff, Sheila M. (Brown) Hendrickson, prays for such other relief as may be necessary or appropriate.

Respectfully Submitted,

_____
Ann Buntin Steiner #11697
Attorney for Plaintiff
Steiner & Steiner
613 Woodland Street
Nashville, Tennessee 37206
(615) 244-5063